# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MELBA JOYCE RIVERA,

       Plaintiff/Third-Party Plaintiff,
vs.                                            No. CIV  11-827 WJ/LFG

FAST EDDIES, INC., EDDIE NELSON,
DIANE NELSON, CHRIS BLETHIN,

       Defendants.
and

MELBA JOYCE RIVERA, as assignee of
Fast Eddies, Inc,, Eddie Nelson, Diane
Nelson and Chris Blethin,

       Third-Party Plaintiff,
  vs.

VALLEY FORGE INSURANCE COMPANY,
dba CNA Insurance Company,

       Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO QUASH

### Introduction

THIS MATTER came before the Court on Third-Party Defendant Valley Forge Insurance Company's ("Valley Forge") Motion to Quash in Part[1] the Amended Subpoena Issued to Attorney Rob Doughty [Doc. 62]. Third-Party Plaintiff Melba Joyce Rivera ("Rivera") responded to the motion to quash [Doc. 74]. On August 20, 2012, Valley Forge filed a reply [Doc. 83].

---

[1]Valley Forge asks that the subpoena be quashed only in part as it refers to documents that Valley Forge withheld as privileged.  Valley Forge already produced unprotected documents.  [Doc. 62, at 3-4.]

**Background**

Rivera served a subpoena *duces tecum* on attorney Robert M. Doughty ("Doughty") seeking to compel Doughty to produce the following documents:

> [A]ll documents, emails, electronically stored information and communications to include but not limited to your entire file dealing with Melba Joyce Rivera v. Fast Eddies, Inc., Eddie Nelson, Diane Nelson, and Chris Blethin, D-0202-CV-200806914. For documents not produced please provide a privilege log.

[Doc. 62, Ex. 1.]

In accord with the subpoena's demand, Doughty produced non-privileged documents, and in accord with the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), provided a privilege log. Doughty withheld documents claimed as privileged, provided a general description of the documents, and stated why the documents were withheld. Below is Doughty's privilege log.

| BATES NO. | DESCRIPTION | WHY WITHHELD |
|---|---|---|
| Doughty 0747 | Emails between Doughty and Spurgin dated December 7 and December 9, 2010 | Attorney-Client Privilege Work Product Doctrine (emails regarding trial setting and settlement) |
| Doughty 0748 | Emails between Doughty and Spurgin dated November 5 and 8, 2010 | Attorney/Client Privilege; Work Product (emails regarding mediation) |
| Doughty 0749-0758 | Letter from Doughty to Spurgin dated October 7, 2010 | Attorney/Client Privilege Work Product (Doughty's evaluation of case) |
| Doughty 0759-0761 | Emails between Doughty and Spurgin dated September 27, 2010 | Attorney/Client Privilege; Work Product (emails relating to Doughty's collection of information for his evaluation of the case) |
| Doughty 0762-0763 | Email from Spurgin to Doughty dated September 22, 2010 | Attorney/Client Privilege; Work Product (Assignment of case to Doughty) |

2

| Doughty 0754-0766 | Doughty's notes (undated) | Attorney/Client Privilege; Work Product (Doughty's notes relating to his collection of information and evaluation of case) |
|---|---|---|

[Doc. 62, Ex. 2.]

## Valley Forge's Motion to Quash, Response & Reply

In support of its motion to quash subpoena issued to Doughty, Valley Forge appends not only the privilege log set out above, but also an affidavit from its attorney, Doughty. [Doc. 83, Ex. 3.] Doughty testified that he was hired by Barbara Spurgin, the CNA claims adjuster assigned to the lawsuit brought by Rivera against Diane and Eddie Nelson and others. [Id., ¶ 2.] Doughty stated he was hired to monitor the status of the Rivera litigation and provide legal advice regarding the potential liability and damage exposure in the litigation. [Id., ¶ 3.] He testified that Ms. Spurgin provided him with certain documents generated in the litigation, and he gathered additional pleadings and additional discovery from the attorney who was defending the Rivera lawsuit. [Id.]

In addition, Doughty testified that he conducted research into legal issues which he deemed relevant and wrote an opinion letter to Ms. Spurgin, dated October 7, 2010, providing her with his own analyses of the Rivera lawsuit, of the legal issues presented in the case, and of potential liability and damage exposure. Doughty indicated that, from the outset, he understood that he was providing legal advice to Ms. Spurgin and that his role was not that of an investigator or an adjuster. [Id., ¶¶ 4-6.]

Doughty averred that he exchanged e-mails with Ms. Spurgin to keep her apprised of his progress and participated in various conference calls with her and her supervisors during which he discussed his analysis of the legal issues and potential exposure of the Nelsons. [Id., ¶ 7.] Subsequent to submitting his analysis, Ms. Spurgin asked him to monitor the trial of the case, but he did not perform that function, as the case settled prior to trial. [Id., ¶ 8.]

In Rivera's response, she set out background allegations concerning a January 10, 2010 deposition of Chris Blethin ("Blethin"), Blethin's status as undefended from January 2010 to December 2010, Valley Forge's alleged "drop down duty to defend and duty to monitor," and Doughty's alleged participation in the decision to violate state court order. [Doc. 74, at 1-4.]

More specific to the motion to quash and the privilege log, Rivera argued that she was "entitled to full discovery regarding VF's [Valley Forge's] adjustment of the claim." [Doc. 74, at 4.] She further asserted that the "topic of how Doughty participated in adjusting the claim is not protected by the attorney-client privilege." "VF did not obtain a coverage opinion from Doughty." [Id.] According to Rivera, since Valley Forge did not obtain a coverage opinion from Doughty, "it appears that the primary purpose of Doughty's involvement was to evaluate the insureds' liability as an adjusting function on behalf of the insured." [Id.] Stated differently, Rivera contends that Doughty acted in "an investigative capacity for the insurer" rather than as a legal counselor. Thus, she asserts that the attorney-client privilege does not protect the communications at issue. In addition, Rivera argues that Doughty's involvement in evaluating potential liability was on behalf of the insured; thus, his liability analysis is not protected by the attorney-client privilege.

Rivera set forth a number of alternative arguments why she believes she is entitled to review all of the documents requested in the subpoena and take Doughty's deposition regarding Valley Forge's decision not to attend mediation. The alternative arguments include the "dual purpose test," waiver of the attorney-client privilege by Valley Forge when it raised the affirmative defense that it acted in good faith, and waiver of the privilege based on Doughty's advice to Valley Forge to perpetrate a fraud on the court.

In its reply, Valley Forge stated that it demonstrated through Doughty's affidavit that it hired attorney Doughty in September 2010 to provide legal advise regarding the ongoing Rivera litigation, that communications between Doughty and Valley Forge regarding the lawsuit are protected by the

4

attorney-client privilege, and that Doughty's personal notes are protected by the work product doctrine. [Doc. 83, at 1-2.] Valley Forge cited legal authority for the proposition that communications between an insurance company and outside counsel retained to provide legal advice regarding coverage, rather than routine claims adjustment, is protected by the attorney-client privilege.

Valley Forge recognized Rivera's position that an attorney's communications, when that attorney is retained by an insurer to act as an adjuster rather than to give legal advice, are not always protected by the privilege. Similarly, if the attorney is retained merely to investigate a claim, the attorney's communications with the insurer may not be protected. [Doc. 83, at 3.] Valley Forge disagrees that any of these principles apply to this situation where Doughty was hired to provide Valley Forge with legal advice.

Valley Forge further explained that Spurgin, the claims adjuster, handled the underlying litigation and the adjustment of the pertinent matter for more than two years before retaining Doughty. Spurgin retained Doughty in September 2010, shortly before a scheduled mediation and the trial of the lawsuit. Retention of Doughty purportedly occurred well after Spurgin completed her investigation. Valley Forge argues that the dominant purpose of Doughty's work was to provide legal advice regarding potential liability exposure, and therefore, is protected by the privilege.

Valley Forge contests Rivera's alternative arguments concerning waiver of the privilege and Doughty's alleged participation in a decision not to send a representative to a mediation. Valley Forge asks that the Court quash Rivera's amended subpoena to Doughty, relieving him from producing documents listed in the privilege log. [Doc. 83.]

**Analysis**

I.     **Pertinent Legal Standards**

In a diversity action, such as this, the substantive law of New Mexico on attorney-client privilege applies.  Fed. R. Evid. 501.

> Because the instant action is a diversity action, the substance of the privileges asserted are governed by state law . . . .  However, it hardly needs mentioning that the *procedure* for responding to discovery requests in federal court litigation, including the procedure for the proper assertion of a privilege, is governed by federal law.

Eureka Fin. Corp. v. Hartford Accident and Indem. Co., 136 F.R.D. 179, 182 (E.D.Cal. 1991) (emphasis in original).  New Mexico's Rules of Evidence expressly provide for and govern the attorney-client privilege in New Mexico.  *See* Rule 11-503(C) NMRA; Pub. Serv. Co. of N.M. v. Lyons, 2000–NMCA–077, ¶¶ 11–13, 129 N.M. 487, 495 (Ct. App. 2000).

The purpose of the attorney-client privilege is to encourage full and frank communications between attorneys and their clients in the interests of promoting the broader public interest in observance of law and the administration of justice.  Lyons, 129 N.M. at 495.  *See* S.F. Pac. Gold Corp. v. United Nuclear Corp., 143 N.M. 215, 222 (Ct. App. 2007) (purpose of the privilege is to encourage the free flow of information between attorney and client) (citation omitted).  The privilege belongs to the client.  Rule 11-503(C) NMRA; State v. Armijo, 118 N.M. 802, 817 (Ct. App.), *cert. denied*, 119 N.M. 20 (1994).  The party resisting discovery has the burden of establishing the existence of the privilege.  State v. Gallegos, 92 N.M. 370, 378 (Ct. App.), *cert. denied,* 92 N.M. 353 (1978).

The work product doctrine is distinct from and broader than the attorney-client privilege. United States v. Nobles, 422 U.S. 225, 238 n. 11 (1975), and, unlike attorney-client privilege, federal law is controlling with respect to the work product doctrine even in diversity cases.  Frontier Refining, Inc. v. Gorman-Rupp Co., 136 F.3d 695, 702 n. 10 (10th Cir. 1998).  Although the

6

attorney-client privilege covers confidential communications between attorney and client and focuses on the relationship itself, the work product doctrine is not limited to communications, but "protects both the attorney-client relationship and a complex of individual interests particular to attorneys that their clients may not share." In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982) (citations omitted).

The work product doctrine is not accurately termed a "privilege." Rather, the doctrine was first articulated by the United States Supreme Court in Hickman v. Taylor, 329 U.S. 495, 510-11 (1947), and was incorporated into the Federal Rules in 1970. *See* Fed. R. Civ. P. 26(b)(3), 1970 Advisory Committee Commentary. The work product privilege exists "to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. The purpose of the work product doctrine . . . is to encourage effective trial preparation." United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980).

As with attorney-client protected documents, the party seeking to assert the work product doctrine as a bar to discovery has the burden of establishing that it is applicable. Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir. 1984). The work product doctrine "protects only that which was prepared in preparation for litigation." In Re Grand Jury Proceedings (Vargas), 727 F.2d 941, 945 (10th Cir.), *cert. denied,* 469 U.S. 819 (1984). It does not protect facts contained within the work product, but, rather, is meant to provide protection for an attorney's legal impressions and strategies. Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).

To come within the work product protection, a document must have been "prepared in anticipation of litigation or for trial" by or for a party, or by or for that party's representative. Fed. R. Civ. P. 26(b)(3)(A). A document prepared in the regular course of business or business advice rather than in anticipation of litigation is not work product. In Re Grand Jury Proceedings, 156 F.3d 1038, 1042 (10th Cir. 1998). The fact that a matter might conceivably end up in litigation someday

is not the appropriate test. "While one might argue that almost all of the work attorneys do, or the advice they dispense, is in anticipation of litigation or its avoidance, the work immunity requires a more immediate showing than the remote possibility of litigation." Garfinkle v. Arcata Nat. Corp., 64 F.R.D. 688, 690 (S.D.N.Y. 1974).

## II.     Discussion of Materials Sought by Subpoena and Rivera's Requests

In this case, Rivera characterizes Doughty's work as simply a monitor or an investigator. However, she supplied no support for this self-serving assertion. In contrast, Valley Forge argued that it retained Doughty in September 2010 to provide legal advice regarding the Rivera lawsuit and that Doughty gathered and reviewed certain information concerning his legal advice regarding that lawsuit. Moreover, Doughty provided sworn testimony that he was hired to provide a confidential assessment on pending litigation, an evaluation of the case, an overview of the risks, and to offer legal advice.

The Court concludes that Doughty's notes and communications, as listed in the privilege log, consist of confidential communications between an attorney and his client. Thus, such communications and notes fall squarely within the attorney-client privilege and are properly withheld, as listed in the privilege log. *See, e.g.,* Roesler v. TIG Ins. Co., 251 F. App'x 489, 499-500 (10th Cir. 2007) (insurance company properly asserted attorney-client privilege over communications with its attorney).

In addition, the Court finds that Doughty's notes and his communications with his client are protected by the work product doctrine. Based on the privilege log's descriptions of the documents being withheld, along with Doughty's affidavit, the notes and communications at issue contain Valley Forge's attorney's legal impressions and strategies. There is no demonstration that Doughty's notes or these communications were prepared in the regular course of business. Instead, the communications were made in anticipation of litigation that was already ongoing.

The Court concludes that Valley Forge satisfied its burden in demonstrating that the withheld notes and communications are attorney-client privileged and subject to protection under the work product doctrine.

One of Rivera's alternative arguments is that communications between Doughty and Valley Forge were "apparently for dual purposes" – "the first being to fulfill Valley Forge's duty to monitor and evaluate the insured's liability, and the second being to analyze Valley Forge's liability." [Doc. 74, at 5.] Rivera contends that the "dominant purpose rule applies in determining whether communications are privileged." [Id.] She essentially argues that the dominant purpose of Doughty's work was as an investigator or adjustor; therefore, his communications, etc. are not privileged. In support of her position concerning the "dominant purpose rule," Rivera relies on a state law case from California courts.

The Court located no legal authority in New Mexico or the Tenth Circuit applying Rivera's theory of the "dual purpose test" or the "dominant purpose rule," nor did Rivera cite such authority. In any event, even if such a test supplied the applicable standard in deciding whether communications are protected by attorney-client privilege, the Court determines that the communications and notes at issue were made for the primary purpose of providing legal advice to Valley Forge regarding ongoing litigation and potential liability. Accordingly, the Court rejects Rivera's argument concerning the dual purpose test and denies a request for an *in camera* inspection of the documents listed on Doughty's privilege log.

Rivera next argues that she is entitled to depose Doughty "regarding the non-privileged issue of whether he monitored the underlying lawsuit." [Doc. 74, at 6.] She further asserts:

> Because Doughty acted in [sic] adjusting capacity his actions were (or should have been taken) on behalf of the insured, not for the purpose of promoting [Valley Forge's] legal position, and Rivera should be permitted to inquire as to which actions he took on the insured's behalf.

9

[Id.] Again, Rivera contends that Doughty was acting in an "investigative capacity" rather than as a "legal counselor." She relies primarily on a decision from the Colorado Appellate court where the insurer failed to submit any evidence as to the role the attorney played as it pertained to privileged information that the insurer withheld.

Rivera also identifies an email, dated November 8, 2010 from Spurgin to a number of other individuals, with a subject line of "Post PreTrial Conference Summary." [Doc. 74-6, Ex. F.] The email provides a synopsis of a conference call held October 12, 2010, with "Robert Doughty, monitoring counsel," and others. Spurgin argues that Valley Forge's reference to Doughty as "monitoring counsel" in this email demonstrates that Doughty's duties were not as attorney, but rather as merely a monitor of the lawsuit.

The Court already rejected the essence of Rivera's argument, *i.e.,* that Doughty acted merely as a monitor, investigator, or adjuster rather than in the role of legal counsel, in reference to the materials withheld as privileged. *See* analysis *supra*. None of these alternative arguments are convincing. Moreover, Rivera's reliance on Colorado state law and a single email referring to Doughty as "monitoring counsel,"[2] do not persuade the Court otherwise. Thus, the Court denies Rivera's request to take Doughty's deposition regarding how he allegedly monitored the lawsuit and to review all documents of Doughty's related to alleged monitoring of the lawsuit.

Rivera also takes the position that Valley Forge waived the attorney-client privilege by raising the affirmative defense that it acted in good faith.

> Because Valley Forge raised the affirmative defense that it acted in
> good faith at all times, Plaintiffs are entitled to complete discovery

---

[2]Rivera also identified a December 7, 2010 email from Spurgin that indicates Doughty's associate would attend trial each day and report to Valley Forge but that Valley Forge would not have anyone sitting at the defense counsel. Rivera refers to a document noted as "FV 252." The Court did not find any such document numbered FV 252, attached to Rivera's response. However, there is a December 7, 2010 email from Spurgin [Ex. C, or FV 265] that does not exactly correspond to Rivera's position. In any event, the Court does not find this email to support Rivera's position.

10

> regarding all of the factors considered by [Valley Forge] in refusing to defend and settle the lawsuit, including any opinion by Doughty that factored into that analysis. Attorney client privilege is waived when the communication is necessary to establish a defense.

[Doc. 74, at 8] (citations omitted).

It is true that the attorney-client privilege can be waived through certain conduct. *See, e.g.,* Allen v. LeMaster, 2012 -NMSC- 001, at ¶ 34, 267 P.3d 806, 814 (2011) (noting that under common law, the privilege can be waived); Rule 11-511 NMRA ("Waiver of privilege by voluntary disclosure). *See also* In re Qwest Commc'n Int'l. Inc., 450 F.3d 1179, 1185 (10th Cir.) (because confidentiality is critical to the privilege, it is lost if the client discloses the substance of an otherwise privileged communication to a third party), *cert. denied*, 549 U.S. 1031 (2006); United States v. Bernard, 877 F.2d 1463, 1465 (10th Cir. 1989) ("Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."); United States v. Pinson, 584 F.3d 972, 977-78 (10th Cir. 2009) (noting that this circuit has acknowledged the implied waiver of attorney-client privilege that arises when a party puts his counsel's advice in issue), *cert. denied,* 130 S.Ct. 1548 (2010).

Rivera's argument is akin to the position that a litigant could automatically waive a privileged protection by raising a claim or affirmative defense, thereby placing certain subjects "at issue" in a case. The Court does not find that to be the case here. Valley Forge did not put the advice of Doughty at issue merely by raising the affirmative defense of having acted in good faith. *See, e.g.,* Lindley v. Life Investors Ins. Co. of Am., 2010 WL 1741407, *7 (N.D.Okla. Apr. 28, 2010) (unpublished) (*citing* Frontier Refining*,* 136 F.3d at 701) (a litigant does not automatically waive privilege protection by asserting an affirmative defense); Williams v. Sprint/United Mgmt. Co., 464 F.Supp.2d 1100, 1103 n.3 (D.Kan. 2006) (while the defendant asserted "good faith" compliance as an affirmative defense, the court previously rejected the plaintiffs' argument that the

11

defendant automatically waived the privilege merely by asserting "good faith" in its answer), *reconsideration denied by* 2007 WL 315826 (D.Kan. Jan 31, 2007).

Under the circumstances of this case, the Court does not find that Valley Forge waived, either expressly or impliedly, its attorney-client privilege over the withheld communications and notes. Thus, the Court denies Rivera's request to review Doughty's documents and take his deposition regarding the good-faith affirmative defense.

Finally, Rivera argues that to the extent Doughty advised Valley Forge to violate a state court order by not attending a mediation conference, such advice perpetrated a fraud on the court and waives the privilege. Again, Rivera asserts that Doughty waived any privilege he might have had, this time by alleged fraudulent conduct. [Doc. 74, at 8-10.] Rivera contends that Plaintiffs are entitled to depose Doughty to determine when he obtained a copy of the state court order setting mediation and "whether he advised Valley Forge to violate" the order. [Id. at 9.]

Based on the information before it, the Court does not find that Valley Forge waived its privilege under Rule 11-511 NMRA, or that Doughty perpetrated a fraud on the court. At most, Rivera's argument is speculative. The Court finds no basis to grant Rivera's request to review all correspondence to or from Doughty regarding mediation or to depose Doughty regarding Valley Forge's alleged decision not to attend a mediation conference.

## Conclusion

For the above-stated reasons, the Court concludes that Third Party Defendant Valley Forge's Motion to Quash in Part [Doc. 62] will be GRANTED, and that the portions of the subpoena that require production of the documents or notes listed as protected by the attorney-client privilege or the work product doctrine are quashed. Such documents need not be produced.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge