IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MELBA JOYCE RIVERA,

       Plaintiff,

  vs.                                                  No. 1:11-cv-00827-WPJ/LFG

FAST EDDIE'S, INC., EDDIE NELSON,
DIANE NELSON, and CHRIS BLETHIN,

       Defendants,

  and

MELBA JOYCE RIVERA, as assignee
of FAST EDDIES, INC., EDDIE NELSON,
DIANE NELSON, and CHRIS BLETHIN,

       Third Party Plaintiff,

  vs.

VALLEY FORGE INSURANCE COMPANY,
d/b/a CNA INSURANCE COMPANY,

       Third Party Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a First Motion for Partial Summary Judgment filed by Third-Party Defendant Valley Forge Insurance Company ("Defendant" or "Valley Forge") on July 5, 2012 (**Doc. 58**). Having reviewed the parties' briefs and applicable law, I find that Defendant's motion is well-taken and shall be granted. The Court finds that the Valley Forge Policy provided excess insurance; that the Valley Forge "Other Insurance" clause

is not morally repugnant and is enforceable; and that Defendant Chris Blethin was not an "Insured" under the Valley Forge Policy.

## BACKGROUND

In this case, Plaintiff Rivera (as Third-Party Plaintiff) asserts claims for insurance bad faith for failure to defend, indemnify and settle; bad faith breach of insurance contract; violation of the Insurance Practices Act; and for declaratory judgment. Rivera was injured during a guided four-wheeler tour operated by Fast Eddie's, Inc. ("Fast Eddie's'). Defendants Eddie and Diane Nelson are the owners of Fast Eddie's. Chris Blethin was the guide on that ATV excursion. Doc. 58-1, Ex. D.

Fast Eddie's maintained insurance policies with two carriers, Philadelphia Insurance Co. ("Philadelphia") and Valley Forge Insurance Company ("Valley Forge," also referred to in pleadings as the "CNA policy"). During the course of Plaintiff Rivera's suit, Philadelphia provided legal counsel, Mr. Michael Brennan, to represent Fast Eddie's and ultimately settled the case on December 8, 2010. The settlement agreement received state court approval on March 2, 2011. The settlement resolved all claims between Rivera and Fast Eddie's, and included an assignment to Rivera of Fast Eddie's legal rights against Valley Forge. On August 8, 2011, Rivera, as assignee of Fast Eddie's, filed a Third-Party Complaint against Third-Party Defendant Valley Forge. On September 15, 2011, Defendant Valley Forge Insurance Company ("Valley Forge") removed the case to federal court.[1]

The essence of the federal lawsuit concerns Valley Forge's alleged failure to defend the Insureds, failure to offer up its policy limits to protect the Insureds, and failure to participate in the settlement of the underlying litigation. Plaintiff contends that Valley Forge is a primary

---

[1] These facts are undisputed. *See* Doc. 15 (Court's Mem.Op.& Order denying motion to remand). The underlying personal injury complaint is attached as exhibits to the pleadings. Doc. 58-1, Exs. C & D, and as an exhibit to the Notice of Removal, Doc. 1-1.

insurance policy, but that Valley Forge falsely represented that the Valley Forge policy was an excess policy, and that Valley Forge was obligated to participate in the defense and indemnity on a participatory (50/50) basis with the Philadelphia policy. The two policies are different in several respects, which will be described in more detail below, but the Court offers a synopsis here in order to put the facts in a more understandable perspective. The CNA Policy issued by Valley Forge was issued to the Nelsons, while the Philadelphia Policy was issued to Fast Eddie's.

One of the main differences between the two policies is how they provide coverage where other insurance is available. The Valley Forge Policy contains an "Other Insurance" provision which states that if other insurance covers the same loss or damage, the policy pays only for the amount of covered loss or damage *in excess* of the amount due from that other insurance. Plaintiff takes issue in particular with this "escape clause" (as characterized by Plaintiff) which allows Valley Forge to eschew coverage if other coverage exists from other insurance. Plaintiff contends that this kind of clause has been held "repugnant" in New Mexico because it could lead to a situation where the insured is afforded no coverage under a policy for which the insured has paid premiums. In contrast, under the Philadelphia Policy's "Other Insurance" provision, Philadelphia "shares" coverage if another insurance policy also provides coverage. In addition, the Philadelphia Policy contains a provision describing when the policy provides excess coverage, for instance, for claims arising out the maintenance and use of "autos" or watercraft, to the extent such claims have not been excluded from the Policy.

**I.      Undisputed Facts**

Defendant Valley Forge contends that Plaintiff Rivera's claims must be dismissed because: (1) neither Fast Eddie's nor Chris Blethin was an "Insured" under the Valley Forge

Policy; and (2) the Valley Forge Policy provided only excess coverage to the Nelsons for Rivera's claims.  In response, Plaintiff claims that (1) the policy afforded primary coverage; and (2) Valley Forge owed Blethin a defense and its factual arguments about coverage are incorrect and too late.

A.     <u>The Valley Forge Policy</u>

*1.     Who is An "Insured" Under the Valley Forge Policy*

As mentioned above, Diane and Eddie Nelson were the named insured under a Business Account Package Policy issued by Valley Forge, effective on the dates in question.  In the provision setting forth the coverage for business liability, Valley Forge recognized its right and duty to defend the insured against any "suit" seeking damages for bodily injury to which the insurance applied.  The named "insureds" under the Valley Forge Policy are Diane and Eddie Nelson, and also include their "employees" who are acting within the scope of employment.  Ex. H (excerpts of Valley Forge Policy).   The parties disagree whether Blethin would be considered an "insured" under the Valley Forge Policy.

It is undisputed that Chris Blethin ("Blethin") was an employee of Fast Eddie's at the time of Rivera's injuries.[2]  One of  the contested issues is whether Blethin was employed by the Nelsons.   Plaintiff claims that this issue was never fleshed out in the underlying litigation because the insurers attempted to label Blethin an independent contractor, for whom there would be no coverage, in order to foist all liability on him. Defendant insists that Blethin's status as an employee of the Nelsons (as opposed to being an employee of Fast Eddie's), was never raised in the underlying lawsuit.  Plaintiff contends that the issue was never resolved, it certainly was present in the proceedings prior to settlement.  The purported dispute of fact concerning whether

---

[2]  The facts recited herein are supported by the record in the form of the parties' exhibits.  For ease of reading, the Court refers to the record where necessary or where those exhibits are frequently cited.

4

Blethin was an employee of the Nelsons has ramifications for whether Valley Forge had the duty to investigate whether Blethin was entitled to a defense.[3] The Court defers further discussion of this "disputed" issue to the analysis below.

    2.    *The Valley Forge "Other Insurance" Provision*

The Valley Forge Policy contains an **"Other Insurance"** provision providing in pertinent part:

> 1.    If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.
> . . .
> 3.    When this insurance is excess, we will have no duty under Business Account Package Policy Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

(Exhibit H, Excerpts from Valley Forge Policy at Bates No. VF 0194).

B.    <u>The Philadelphia Policy</u>

    1.    *Who is an "Insured" Under the Philadelphia Policy*

Fast Eddie's, Inc. was the named insured under a Commercial Package Policy issued by Philadelphia Indemnity Insurance Company. Ex. I. Under the Commercial General Liability Policy, one is considered an insured" if designated in the Declarations as:

> An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

[and]
> . . . "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", . . . but only for acts within the scope of

---

[3] The issue had further ramifications concerning conflicts of interest in legal representation. Initially, Mr. Brennan represented both the Nelsons and Blethin, but later felt compelled to withdraw from his representation of Blethin due to Blethin's failure to cooperate and due to a breakdown in the attorney-client relationship. Doc. 58 at 3.

      their employment by you or while performing duties related to the conduct of your business.

Ex. I (excerpts from Philadelphia Policy at Bates No. VF 0038). Thus, Chris Blethin, Diane Nelson and Eddie Nelson were all "insureds" under the Philadelphia Policy due to their status, respectively, as an employee and stockholders/executive officers/directors of Fast Eddie's.

      2.     *Philadelphia Policy Exclusions*

The Philadelphia Policy contains **exclusions** which relate to claims involving "aircraft, auto or watercraft," excluding from coverage claims for bodily injury or property damage arising out of the maintenance or use of an "auto" or watercraft owned, operated or loaned to any insured. Thus, an injury arising from the use of an "auto" were excluded from coverage unless it was not subject to "Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damages Liability" ("Exclusion g"). Ex. I, Bates No. VF 0033 (exclusions for "Aircraft, Auto or Watercraft").

      3.     *Philadelphia's "Other Insurance Provision"*

The Policy also contains the following provisions regarding "other insurance":

> **. . . Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
>     **a. Primary Insurance**
>
> This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
>
>     **b. Excess Insurance**
>
> This insurance is excess over:

    (1)       Any of the other insurance, whether primary, excess, contingent or on any other basis:

          . . .

          (d)       If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damages Liability [Exclusion g"].

    (2)       Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

          . . .

    **c. Method of Sharing**

    If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Ex. I, excerpts from Philadelphia Policy at Bates No. VF 0040.

    4.     *Dispute Over Primary and Excess Coverage*

The biggest factual dispute relates to Fact No. 16, where the parties disagree as to which policy is the primary policy, and which is excess policy—but the dispute is not what it purports to be at all.  Valley Forge states that it is undisputed that it was clearly the excess insurer and that Philadelphia was the primary insurer. Plaintiff attempts to create a factual dispute by claiming that an ATV is an "auto" under the Philadelphia Policy excess insurance provision because claims arising from the operation of an ATV are not subject to "Exclusion g" based on an endorsement which adds coverage for "ATV tours."  Ex. KK.   Thus, Plaintiff argues that while Philadelphia was potentially a primary insurer, it became the excess insurer because of its "excess" provisions, which included ATV tours.

7

However, a material factual dispute does not exist regarding Fact No. 16. The only reasonable conclusion that comes from a plain reading of the pertinent policy language is that the excess provision in the Philadelphia Policy does not apply to ATV tours because an ATV is not an "auto" as defined under the Philadelphia Policy:

> "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. . . .

Ex. I, Bates No. VF 0040 ("Section V—Definitions"). Other than the fact that the Philadelphia Policy definition of "auto" does not include an ATV, it is absurd to categorize an ATV as a land motor vehicle designed for travel on public roads. New Mexico law includes "all-terrain vehicle" within the definition of an "off-highway motor vehicle" designed for operation "exclusively off the highway or road." N.M.S.A. 1978 § 66-3-1001.1(E); *see also American Select Ins. Co. v. Taylor,* 445 F.Supp.2d 681, 685 (N.D.W.Va., 2006) (holding that ATV was not an "automobile" designed mainly for use on public roads as defined in insurer's policy, and noting that an ATV is designed for use over roadless terrain). Thus, as a matter of law, an ATV is not an "auto" under the Philadelphia Policy, and does not come under the "excess insurance" provision. As for the "guided ATV tour" endorsement, it provides coverage for ATV tours, but this coverage has nothing to do with the situations described in the "excess insurance" provision.

Plaintiff's objective for Fact No. 16 is, of course, to present evidence suggesting that coverage in the Philadelphia Policy came within its "excess" provision, but Plaintiff has not provided such evidence. Plaintiff's gloss on the Philadelphia Policy language is not factual evidence, nor is it supported by a plain reading of the Policy. No reasonable fact finder would read the relevant provisions of the Philadelphia Policy as providing "excess insurance" coverage for guided ATV tours.

B.      Additional Facts Presented by Plaintiff

Plaintiff's additional facts (Doc. 112 at 16-22) do not create factual disputes on issues presented in the instant motion for two reasons. First, the supporting "exhibit" for many of these additional facts is Defendant's Answer (Doc. 4), which is not sufficient to create a factual dispute. Second, many of the additional facts are related to the issue of whether Valley Forge met its obligations as an excess insurer, which is not one of the arguments raised by Valley Forge in the instant motion. For example, Plaintiff states that Valley Forge denied primary coverage of Plaintiff's claim and refused to undertake or participate in the defense of the Insureds under the Valley Forge Policy. Valley Forge admits that its policy provided excess coverage to the Nelsons for Plaintiff's claims, but denies that it had any obligation to undertake or participate in the defense of Fast Eddie's or Blethin. Valley Forge also denies that it *refused* to undertake or participate in the defense of the Nelsons. Instead, Valley Forge explains its conduct as consistent with its obligation as an excess insurer, which was to confirm that the Nelsons were being represented by counsel secured by the primary insurer (Philadelphia) and by monitoring the progress of the litigation. *See* Pltff's Additional Facts 20, 21, 23 & 24, and responses thereto. Valley Forge has filed a second motion for summary judgment (Doc. 108) which takes up the issue of whether Valley Forge properly discharged its obligations as an excess insurer. Thus, for purposes of this motion, it is premature to consider issues related to Defendant's conduct as an excess insurer, except for the issue related to Valley Forge's alleged duty to defend Blethin.[4]

Other additional facts presented by Plaintiff are either immaterial or constitute legal argument that is not supported by any testimony or evidence. There is one exception with regard to Plaintiff's additional fact No. 16:

---

[4] Defendant states that the filing of the second motion for summary judgment anticipates a ruling by this Court that the Valley Forge Policy provided excess coverage to the Nelsons for Rivera's claims in the underling lawsuit. *See* Doc. 58 at 6, n.2.

> The Valley Forge Other Insurance Clause contains a pure "escape" provision in which the Valley Forge "excess" provision remains "excess of the amount due from that other insurance (Philadelphia), whether you can collect on it or not." Meaning if the Philadelphia primary cannot pay any part of the first $1.0 million, the Valley Forge "excess" provision remains excess and the insured looses [sic] that portion of the first level of primary coverage. Valley Forge therefore "escapes" primary coverage at the first level if Philadelphia is unable to pay.

Pltff's Add'l Fact No. 16.   Defendant disputes this fact as "unsupported by the referenced exhibit," referring to Valley Forge's "Other Insurance" provision:

> If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

Contrary to Valley Forge's objection, Plaintiff's Additional Fact No. 16 appears to be an accurate description of what Valley Forge's "Other Insurance" provision means:  Valley Forge pays only in excess of what other insurance pays, whether or not Plaintiff is able to collect on that other insurance.  This statement also seems to be consistent with Valley Forge's argument that it is an excess insurer.

      Accordingly, with regard to the undisputed facts related to the issues presented in this motion, the Court finds that it is undisputed that Philadelphia was the primary insurer and that under the provisions of the Valley Forge Policy, Valley Forge was the excess insurer.  The Court makes no finding in this section as to the validity of the "Other Insurance" provision (referred to by Plaintiff as the "escape clause") contained in the Valley Forge Policy which allowed Valley Forge to avoid an obligation to defend or to provide coverage as a primary insurer where coverage was available from another policy.

**II.	Legal Standard**

      Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial; the nonmoving party may not rest on mere allegations or denials in her own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must set forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient to defeat a motion for summary judgment. *Id.* at 252.  Rather, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *See id.* at 249-50 (citation omitted).

## DISCUSSION

Defendant raises two issues in this motion: (1) that the Valley Forge Policy provides only excess coverage to the Nelsons; and (2) that Fast Eddie's and Blethin were not "Insureds" under that Policy.

### I.     Valley Forge "Other Insurance" Provision

The Court has already found that, as a matter of law, the Valley Forge Policy provided excess insurance to the Nelsons.   It is undisputed that the Policy constituted excess insurance any time there is "other insurance covering the same loss or damage."   The Philadelphia Policy clearly provided coverage to the Nelsons for Rivera's claims in the underlying lawsuit because the Nelsons were insured under the Philadelphia Policy due to their status as stockholders/officers/directors of Fast Eddie's.  Philadelphia assumed the defense of the Nelsons,

issued no reservation of rights as to coverage, and never contested Valley Forge's position that it provided only excess coverage to the Nelsons; nor does Plaintiff offer any factual evidence stating otherwise.  Thus, based on the undisputed facts, the Philadelphia Policy constituted "other insurance" covering the same loss or damage" referred to in the Valley Forge Policy's "Other Insurance" provision.  Based on these same undisputed facts, the Philadelphia Policy constituted primary insurance in the underlying suit.  As discussed above, no reasonable reading of the Philadelphia Policy's excess provision leads to the conclusion that guided ATV tours are covered in that provision.

Plaintiff contends that Valley Forge's argument on this issue fails to recognize Philadelphia's "other insurance" clause which conflicts with the "other insurance" clause in the Valley Forge Policy.   Plaintiff points out that if Valley Forge is the excess insurer, and Philadelphia is required to contribute only one-half of the insurance benefits, then the morally repugnant result is that the insured would be only partially insured, although paying premiums for two policies.

"When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Housing Corp. v. Ryder Truck Rental, Inc*., 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987).   New Mexico courts will honor the language of the policies and will give effect to "other insurance" clauses provided they are not mutually repugnant and do not, when read together, deny coverage to the insured. Id. at 581, 746 P.2d at 1113.   Only if the clauses are mutually repugnant will the courts hold both policies primarily liable and require proration of the defense or loss in

proportion to the respective limits of each policy. *Id*. Where "other insurance" clauses are in direct conflict, "neither should be given effect and the loss should be pro-rated between the two insurers." *Utah Power & Light Co. v. Federal Ins. Co*., 983 F.2d 1549, 1560 n. 4. (10th Cir. 1993) (applying Utah law) (citing *Lamb-Weston,-Weston, Inc. v. Oregon Auto. Ins. Co*., 219 Ore. 110, 341 P.2d 110 (Or. 1959)).

Under the Philadelphia Policy:

> This insurance is primary except when b. below applies. If this insurance is primary, **our obligations are not affected unless any of the other insurance is also primary**. Then, we will share with all that other insurance. . . .

Ex. I, Bates No. VF 0041 (emphasis added). The fundamental flaw with Plaintiff's analysis is that it does not consider the plain language in the Philadelphia Policy's "other insurance" provision. Philadelphia's "shared coverage" (also referred to by Plaintiff as "pro rata") provision is triggered *only if* other insurance is *also* primary. Plaintiff's argument is not plausible because in the underlying suit, no "other insurance" was primary. Valley Forge was obligated to provide excess coverage only (see discussion above), leaving Philadelphia as the only primary insurer providing full coverage where "other insurance" was not available for the covered loss or damage.

The most important factor in deciding issues related to "Other Insurance" clauses is to ensure the insured receives the full benefit of the premiums paid. *CC Housing Corp.*, 106 N.M. 577, 580 ("The critical analysis, however, should focus primarily on protecting the one for whose benefits premiums have been paid for insurance coverage, and construing the policies liberally in favor of the insured and strictly against the insurers."). In this case, Valley Forge's excess provisions kicked in once Philadelphia paid its policy limit. Both policies provided a $1 million in liability and medical expenses, and $2 million in general aggregate. Ex. H, Bates No.

13

VF 0136 & Ex. I, Bates No. VF 0012.    The Nelsons received the benefits of their premiums. The two "Other Insurance provisions" do not conflict, and there is no basis to find either provision morally repugnant or unenforceable.[5]

## II.     Whether Blethin Was Insured Under the Valley Forge Policy

The issue of Blethin's status as an Insured under the Valley Forge Policy is relevant to whether Valley Forge had a duty to defend Blethin under that Policy.  Defendant's position is that while parties stipulated that Blethin was an employee of Fast Eddie's, no one ever alleged, and no evidence was ever adduced, to suggest that Blethin was an employee of the Nelsons in relation to Rivera's accident.  Plaintiff contends that the issue was sufficiently present in the proceedings prior to settlement to alert Valley Forge of a potential duty to defend.

In order for Rivera to receive compensation from Valley Forge for injuries sustained as a result of Blethin's conduct, Blethin must be insured under the Valley Forge Policy. *Rehders v. Allstate Ins. Co.*, 139 N.M. 536, 540 (Ct.App. 2006)) (person must be insured under an insurance policy to be entitled to receive benefits pursuant to the policy).  A court  determines whether a party is "insured" by examining the terms of the insurance policy. *Id.*  "When a policy contains clear and unambiguous language, the duty of the reviewing court is to  enforce that language as written as an expression of the intent of the parties." *Garcia v.  Underwriters at Lloyd's London*, 141 N.M. 421, 427 (Ct.App. 2007).

The parties mention that the Nelsons initially held to the position that Blethin was an independent contractor.[6]  This issue is not relevant to the question of whether Blethin was an

---

[5]  Plaintiff presents the "morally repugnant" argument in general terms and does not present any facts, or otherwise argue, that Plaintiff did not receive the policy benefits for the premiums paid in this case.  Moreover, Plaintiff does not contend  that she received only one-half of the insurance benefits or that  Philadelphia did not provide a full defense or full primary coverage.

  Plaintiff suggests that any questions concerning the meaning of *CC Housing* should be certified to the New Mexico Supreme Court.  Doc. 112 at 24.   Certification will not be necessary, since the Court finds that the two "Other Insurance" clauses are not in direct conflict.

14

employee of the Nelsons, but it is relevant to whether Blethin was an Insured for purposes of the underlying settlement.  The facts presented by Defendant show that Blethin was an employee of Fast Eddie's at the time of the accident.  References to Blethin in the state court complaint in the underlying lawsuit, pleadings from that lawsuit, and settlement documents all support this fact.  *See* Ex. C (State Court Complaint, ¶¶ 4, 13); Ex. D (Am. State Court Compl., ¶¶ 4, 12; Ex. D-1 (Excerpts from PreTrial Order); Ex. E (Tr. Hrg. on Mot. to Approve Settlement) at 6, 46-47; Ex. F (Blethin Dep. at pp. 32-36); Ex. G ( Blethin Settlement Agreement) at p. 1, ¶ B.   Defendant states that at no point during the underlying lawsuit did Plaintiff or anyone else contend that Blethin was an employee of the Nelsons, as opposed to being an employee of Fast Eddie's, in relation to the accident.   Plaintiff disputes this fact, but none of the evidence offered by Plaintiff constitutes a  material fact.

An insurer must defend when claims "potentially" or "arguably" come within the scope of coverage. *Servants of the Paraclete, Inc. v. Great Am. Ins. Co*., 857 F. Supp. 822, 829 (D.N.M. 1994).  The fact that Valley Forge provided excess insurance does not relieve it from a duty to defend.  *See Lujan v. Gonzales*, 84 NM 229, 233 (Ct. App. 1972) (obligation to pay is independent of insurer's obligation to defend).  The question is whether Valley Forge had a duty to defend based on the circumstances in the underlying case.   Plaintiff relies on allegations in the underlying Complaint and Amended Complaint that the Nelsons hired and retained Blethin and that their negligence in doing so caused Plaintiff's injuries.  Doc. 110-7, ¶¶ 68-69.  The problem with this evidence is that it is irrelevant because it did not exist at the time of the underlying state court lawsuit, which proceeded on a complaint that alleged Blethin was employed by Fast

---

[6]    Plaintiff views the Nelson's conduct skeptically, stating  that the Nelsons "either falsely or fraudulently, together with their insurance carriers, perpetuated a false claim in the state court that Blethin was an 'independent contractor' seeking to dump all liability off on Blethin to avoid liability under both insurance policies."  Doc. 112 at 7. However, Barbara Spurgin, the Valley Forge adjuster, had been been advised by Mr. Nelson that Blethin was an employee only of Fast Eddie's.  Doc. 110-1, Ex. L (Spurgin Depo.) at 83-84.

15

Eddies—not the Nelsons.  Thus, there would have been no reason for Valley Forge to consider either Fast Eddie's or Blethin to be a potential insured.  Plaintiff argues that an insurer's duty to defend is not based solely on allegations of a complaint.  *See American General Fire & Cas. Co. v. Progressive Cas. Co.*, 110 NM 741, (1990); *Albuquerque Gravel Products Co. v. American Employers Ins. Co*., 282 F.2d 218 (10th Cir. 1960) (duty of an insurer to defend arises not only from the allegations of a complaint against its insured, but may also spring from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage).  However, there was no indication arising from the proceedings of the underlying state court lawsuit to put Valley Forge on notice of a duty to defend either Fast Eddie's or Blethin.   The Philadelphia Policy insured Fast Eddie's, and employees of Fast Eddie's, while the Valley Forge Policy insured the Nelsons.   Plaintiff offers other "evidence" as well.  At the hearing to approve settlement, a question was put to the guardian ad litem regarding Blethin's employment by "the other defendants."

> Q.  Now, you understand that one of the issues that is important to Mr. Blethen is whether or not he was an independent contractor or whether he was an **employee of the other defendants?**

Ex. FF (Tr. at 46) (emphasis added).   Aside from this comment being made at the end of the underlying lawsuit, it is hardly indicative of Blethin's status as an employee of the Nelsons, since he was employed by Fast Eddie's which was also a defendant in that lawsuit.

Plaintiff also contends that Blethin made statements at his deposition which suggest he was an employee of the Nelsons and not an independent contractor.  Ex. GG (Blethin Depo. 36:21-25; 128:15-20).  In one of these "statements," Blethin was asked about his ATV experience "prior to . . . working for Mr. Nelson."  Ex. GG (Blethin Dep. 36:21-25).  In another statement, Blethin was asked if he recalled "during the course of your employment for Mr.

16

Nelson," whether there were other ATV mishaps. Ex. GG, 128:15-19. Questions from counsel referencing employment by the Nelsons do not constitute statements by Blethin, nor are they evidence that Blethin was an employee of the Nelsons.

Accordingly, the Court finds that neither Fast Eddie's nor Chris Blethin were "Insureds" under the Valley Forge Policy.

## CONCLUSION

In sum, the Court finds and concludes that, as a matter of law and based on the undisputed facts, the Valley Forge Policy provided excess insurance coverage while the Philadelphia Policy provided primary insurance coverage.

The Court also finds and concludes that the "Other Insurance" clauses of the two policies do not conflict and there is no basis to find either provision morally repugnant or unenforceable.

Finally, the Court finds and concludes that, based on the undisputed facts, Blethin was not an "Insured" under the Valley Forge Policy, and Valley Forge had no notice that it had a duty to defend in the underlying lawsuit.

Accordingly, the Court grants partial summary judgment to Valley Forge, which dismisses (1) Rivera's claims arising out of her claim that Valley Forge acted improperly in failing to defend or indemnify Fast Eddie's or Blethin, and (2) Rivera's claims arising out of her allegation that Valley Forge provided primary insurance to the Nelsons.

**THEREFORE,**

**IT IS ORDERED** that Defendant's First Motion for Partial Summary Judgment (**Doc. 58**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that (1) Plaintiff's claims arising out of her allegation that Valley Forge acted improperly in failing to defend or indemnify Fast Eddie's or Blethin are

hereby DISMISSED WITH PREJUDICE, and (2) Plaintiff's claims arising out of her allegation that Valley Forge provided primary insurance to the Nelsons are also DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE