IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————

MELBA JOYCE RIVERA,

       Plaintiff,

  vs.                                                         No. 1:11-cv-00827-WPJ/LFG

FAST EDDIE'S, INC., EDDIE NELSON,
DIANE NELSON, and CHRIS BLETHIN,

       Defendants,

  and

MELBA JOYCE RIVERA, as assignee
of FAST EDDIES, INC., EDDIE NELSON,
DIANE NELSON, and CHRIS BLETHIN,

       Third Party Plaintiff,

  vs.

VALLEY FORGE INSURANCE COMPANY,
d/b/a CNA INSURANCE COMPANY,

       Third Party Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT
and
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon a Second Motion for Summary Judgment filed by Defendant Valley Forge Insurance Company ("Valley Forge") on November 9, 2012 **(Doc. 108)** and Plaintiff's Cross-Motion for Summary Judgment, filed November 9, 2012 **(Doc. 109)**. Having reviewed the parties' briefs and applicable law, the Court finds in favor of

Defendant on all issues raised in its motion, and against Plaintiff on all issues raised in its cross-motion.

## BACKGROUND

In this case, Plaintiff Rivera (as Third-Party Plaintiff) asserts claims for insurance bad faith for failure to defend, indemnify and settle; bad faith breach of insurance contract; violation of the Insurance Practices Act; and for declaratory judgment.  Rivera was injured during a guided four-wheeler tour operated by Fast Eddie's, Inc. ("Fast Eddie's').  Defendants Eddie and Diane Nelson (the "Nelsons") are the owners of Fast Eddie's.  Chris Blethin ("Blethin") was the guide on that ATV excursion.  Doc. 58-1, Ex. D.

Fast Eddie's maintained insurance policies with two carriers, Philadelphia Insurance Co. ("Philadelphia") and Valley Forge Insurance Company ("Valley Forge," also referred to in pleadings as the "CNA policy").  The CNA Policy issued by Valley Forge was issued to the Nelsons, while the Philadelphia Policy was issued to Fast Eddie's.  The case began in 2008 as a personal injury lawsuit brought in state district court by Rivera against Defendants Fast Eddie's, the Nelsons and Blethin (*"Rivera* lawsuit").[1]  During the course of Plaintiff Rivera's suit, Philadelphia provided legal counsel, Mr. Michael Brennan, to represent Fast Eddie's.  The case was ultimately settled on December 8, 2010.  The settlement agreement received state court approval on March 2, 2011.  The settlement resolved all claims between Rivera and Fast Eddie's, and included an assignment to Rivera of Fast Eddie's legal rights against Valley Forge.  On August 8, 2011, Rivera, as assignee of Fast Eddie's, filed a Third-Party Complaint against Third-Party Defendant Valley Forge.  On September 15, 2011, Defendant Valley Forge Insurance Company ("Valley Forge") removed the case to federal court.

---

[1] The underlying personal injury complaint is attached as exhibits to the pleadings.  Doc. 58-1, Exs. C & D, and as an exhibit to the Notice of Removal, Doc. 1-1.

The Court recently issued a Memorandum Opinion and Order dismissing with prejudice Plaintiff Rivera's claims that Valley Forge failed to defend or indemnify either Fast Eddie's or Blethin; and also dismissed Plaintiff's claims arising out of her allegation that Valley Forge provided primary insurance to the Nelsons. Doc. 127. The Court's rulings in that Order render moot most of the issues raised in the instant motions, leaving one general issue to be determined: whether Valley Forge acted properly as an excess insurer. Since this issue is central and common to both parties' motions, the Court will address both motions at the same time.

The Philadelphia policy limit was $1 million. Undisp. Fact 42. As an excess insurer, Valley Forge had the duty to monitor the litigation in the underlying case and determine if the primary insurer properly fulfilled its obligation to defend, and to "drop down" and defend the insured if the primary insurer fails in its duty. *See Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476, 1484-85 (10th Cir. 1991); *Insurance Co. of N. Am. v. Medical Protective Co.*, 768 F.2d 315 (10th Cir. 1985). This Court has determined that Philadelphia was the primary insurer, and that Valley Forge was obligated to provide excess coverage only where other insurance was not available for the covered loss or damage—which means that Valley Forge's obligation to pay did not kick in unless and until Philadelphia's policy limits were exceeded. Valley Forge's policy also states that when that policy is excess, it will undertake the defense of an insured *if no other insurer defends. See* Doc. 127 at 5. Since Valley Forge was determined to be an excess carrier by the Court, and it is undisputed that Mr. Brennan was assigned by Philadelphia to the defense of Fast Eddie's, the Nelsons, and Blethin (Deft's Undisp. Fact 11), Valley Forge, as a matter of law, did not fail in any duty to defend its insureds under its policy.

## DISCUSSION

The Court offers a synopsis of the undisputed facts, with sparse reference to the hundreds of documents which are referenced as exhibits. The Court finds none of the "facts" raised in

either Plaintiff's response to Defendant's summary judgment, or in its own motion, sufficient to create a factual dispute about the remaining issues in this case. Plaintiff presents her own spin on the underlying negotiations leading up to the final Settlement Agreement between Rivera and Fast Eddie's, the Nelsons and Blethin ("Settlement Agreement"). As far as Plaintiff's assertions of Valley Forge's abandonment of its duties to its insureds, the Court finds that none of these assertions have any merit, and that any facts raised by Plaintiff to this end are irrelevant, immaterial and extraneous.

As one example, Plaintiff denies a fact presented by Valley Forge, stating that Valley Forge provided no defense and "refused to participate in mediation." Resp. to Undisp. Fact 13. As the undisputed facts will show, Valley Forge never "refused to participate." As another example, Plaintiff asserts that Mr. Brennan, Fast Eddie's defense counsel assigned by Philadelphia, never provided a coverage analysis to the Nelsons. Resp. to Undisp. Fact 14. Doc. 122 at 7. Whether or not Mr. Brennan provided a coverage analysis to the Nelsons has no bearing at all on any claims asserted against Valley Forge, or on Valley Forge's duties as an excess carrier.

In Defendant's Undisp. Fact 8, Valley Forge sets forth the terms from its policy which prohibits the Nelsons from settling any lawsuit brought against them without Valley Forge's knowledge and consent. Plaintiff offers no evidence to rebut Valley Forge's statement, and instead merely "denies" the statement, insisting that Valley Forge "failed to defend or participate in settlement as a primary insured." Resp. to Undisp. Fact 8. The "denial" is sheer conclusory language, unsupported by any factual evidence.

**I.     Legal Standard**

4

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "'[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and designate specific facts so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Ford v. West*, 222 F.3d 767, 774 (10th Cir. 2000).

## II.     Undisputed Facts

The relevant facts regarding the underlying accident, and the underlying policies regarding Valley Forge and Philadelphia are set forth by the Court in its previous Memorandum Opinion and Order.  Doc. 127.   Most of the facts relevant to the instant motions are those leading up to the settlement negotiations.  Both Valley Forge and Philadelphia were notified of the filing of the *Rivera*  lawsuit and both insurers set up claim files for the case.  Valley Forge assigned the *Rivera* claim to its adjuster, Barbara Spurgin.  The Philadelphia adjusters handling the case were Tom Scally and later, Mike Alford.   As mentioned previously, Philadelphia hired Mr. Brennan to represent Fast Eddie's, the Nelsons and Blethin.

It is undisputed that Ms. Spurgin's initial and continuing position was that Valley Forge provided excess coverage to the Nelsons.  It is also undisputed that Ms. Spurgin repeatedly requested Mr. Brennan and Philadelphia to keep her apprised of the progress of the case, and to provide her with pleadings and discovery exchanged.  Undisp. Facts 11, 12, 18, 21, 22 & 23. Spurgin also requested a settlement evaluation of the case and to be informed if/when that evaluation approached the Philadelphia $1 million limit.  Mr. Brennan's consistent evaluation of the case was between $525,000 and $700,000, based on what he believed to be a likely jury verdict.  This evaluation was based on several factors: medical bills totaled approximately

5

$154,000; evidence that Rivera was not entitled to any damages for lost wages; evidence that the Defendants were not negligent; evidence that Rivera bore significant comparative fault both for causing the accident and not wearing a helmet; and the fact that Rivera signed a release of liability when she rented the ATV from Fast Eddie's.

Mr. Brennan believed, and still believes, his evaluation of the case was realistic and took into account the "pros" and "cons" of the case, despite his acknowledgement that Rivera had suffered traumatic brain injury which affected her speech, balance and cognitive abilities. He based this evaluation on evidence such as: Rivera was not entitled to damages for lost wages, and evidence that Rivera bore significant comparative fault for not wearing a helmet. Plaintiff disputes the evaluation amount, particularly regarding a possible award for special damages hovering around $800,000 for pain and suffering as a result of permanent brain injury. *See* Undisp. Fact 20 and Resp.[2] However, the fact that both sides evaluated the case differently does not rebut Valley Forge's facts concerning either its evaluation or how it arrived at that amount.

The parties in the underlying *Rivera* lawsuit were required to attend mediation, which was initially set for July 2010, then rescheduled for November 2010. On September 3, 2010, Ms. Spurgin emailed a letter to Mr. Alford and Mr. Brennan acknowledging Rivera's recent request for a $2 million settlement demand. However, relying on Mr. Brennan's evaluation of an appropriate settlement range, Ms. Spurgin advised them that, as an excess insurer, Valley Forge had no obligation to contribute toward any settlement until Philadelphia paid its full $1 million policy limit, and that her attendance at the November 2010 mediation would serve no purpose. Ms. Spurgin did not attend the mediation, but understood that Mr. Brennan would keep her informed of the progress of the mediation by telephone. Mr. Brennan summarized the

---

[2] Whether Mr. Brennan undervalued the case is not the issue here, but rather whether Valley Forge met its obligations as an excess carrier. This is a distinction that Plaintiff seems to ignore.

mediation later that day as a "waste of time," advising Ms. Spurgin that Plaintiff never modified their $2 million demand.

There was some discussion afterward between Mr. Brennan and Mr. Fadduol, Rivera's attorney, concerning settling with Philadelphia and preserving Rivera's ability to seek additional payment from Valley Forge as the Nelsons' excess insurer. Mr. Fadduol found Mr. Brennan's settlement proposal (which was still based on an evaluation amount below Philadelphia's policy limit) to be "problematic," and rejected Mr. Brennan's offer.

In 2009, Mr. Brennan withdrew from his representation of Blethin. The parties dispute the basis for the withdrawal, but that reason is not material to the issues here.  What is important here is that Blethin was without counsel until November 2010, when Mr. Fadduol suggested that Blethin hire his friend, Tex Quesada who is a Texas lawyer practicing in Dallas.[3] It is undisputed that Mr. Quesada charged Blethin a flat fee of $1 for his services. On the same day Blethin hired Mr. Quesada, Mr. Fadduol's office emailed Mr. Quesada some documents which included a draft settlement agreement between Rivera and Blethin. Based on these documents alone, on December 1, 2010 (a week after receiving the documents from Mr. Fadduol's office), Mr. Quesada agreed to settle Rivera's claims against Blethin on the exact terms proposed in the draft settlement agreement sent to Mr. Quesada by Mr. Fadduol.  The agreement would settle Rivera's claims against Blethin for "$2,343,882, plus punitive damages which could range between $500,000 and $1.0 million," and included Rivera's release and covenant not to execute against Blethin, as well as Blethin's assignment to Rivera of his rights against Philadelphia and Valley Forge. It is undisputed that Mr. Quesada was unfamiliar with the merits of the case, and

---

[3] Plaintiff offers "disputes" of fact here that are nothing more than distractions, stating that Brennan recommended that Mr. Fadduol contact other attorneys to weigh in about the primary/excess coverage issues. These issues are not only irrelevant to the issues here, but having nothing to with the manner in which Mr. Quesada came into this case, which is undisputed.

7

was not even aware that Rivera's last offer at the November 2010 mediation was $2 million, substantially less than the offer Mr. Quesada accepted.

Mr. Fadduol then proceeded to use the settlement agreement between Rivera and Blethin, which he engineered through Mr. Quesada, as leverage over Mr. Brennan's clients and Philadelphia. Philadelphia did not waver from its initial evaluation of the case, but was cautious about potential exposure of bad faith litigation based on the agreement between Rivera and Blethin. The parties entered into a Settlement Agreement that was identical to the one masterminded by Mr. Fadduol for the Rivera/Blethin agreement, with the exception of Philadelphia's additional agreement to pay its $1 million policy limit. Rivera agreed to accept Philadelphia's $1 million policy limit and Defendants' assignment of their bad faith rights against Valley Forge in exchange for partial satisfaction of Rivera's prior settlement agreement with Blethin (the $2.3 million agreement) and Rivera's agreement not to execute against, and full release of, all Defendants. The Settlement Agreement also acknowledges the agreement between Blethen and Rivera for the amount of $2,343.882 "to settle all claims against [Blethin]." Deft's Ex. L. However, it is undisputed that Philadelphia was not a party to the settlement negotiations between Blethin and Rivera.[4]

The Settlement Agreement was judicially approved in state court in March 2011. The pleadings contain additional details regarding the exclusion of Ms. Spurgin from post-mediation settlement discussions or agreements prior to the time the Settlement Agreement was judicially approved. These facts, however, are unnecessary to the Court's analysis here in light of its prior rulings.

**III. Analysis**

---

[4] The Court diverges here from a recitation of the facts to wonder why Philadelphia did not take measures to strike the Rivera/Blethin agreement, in light of the questionable legal practices that were behind it, but Philadelphia's decision to offer its policy limits and cut its losses are not relevant to the matters here.

A.   Plaintiff's Arguments

In its cross-motion for summary judgment, Plaintiff asserts that Valley Forge abandoned its duties as an insurer because it refused to participate in mediation, provided no defense to Blethin (which the Court has already found is a moot issue because Blethin was not "insured" under the Valley Forge policy), and that the terms of the Settlement Agreement are binding upon Valley Forge.  On the other hand, Valley Forge argues that it is not obligated to pay the amount of the Settlement Agreement entered into between Blethin and Rivera that was not covered by the Philadelphia Policy.  The Court finds in favor of Valley Forge on all issues, and denies Plaintiff's motion on all issues.

Plaintiff spends an inordinate amount of time insisting that Valley Forge abandoned its duties because it failed to "participate" in the negotiations.  However, whether Ms. Spurgin should have attended the November 2010 mediation is not relevant to whether Valley Forge is obligated under the terms of the Settlement Agreement.  Her purpose in attending would have been to the benefit of her employer, Valley Forge, to monitor whether Valley Forge's excess insurance would be tapped.  As it turns out, her attendance would have made no difference, since Rivera settled for the limits of the Philadelphia policy, and Valley Forge was under no obligation to cover any "excess" as a result of the agreement between Rivera and Blethin. Accordingly, the arguments raised by Plaintiff in the cross-motion for summary judgment are totally devoid of merit.

B.   Valley Forge's Arguments

The Settlement Agreement is not binding on Valley Forge for multiple reasons any one of which is sufficient to grant summary judgment in favor of Valley Forge.

First, the CNA Policy issued by Valley Forge prohibited the Nelsons from settling any lawsuit brought against them without the knowledge and consent of Valley Forge.  Under the

9

"General Conditions" of the policy, the insureds were under an obligation to "immediately send" Valley Forge "copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; to "cooperate" with Valley Forge "in the investigation, settlement or defense of the claim or "suit" and were prohibited from assuming "any obligation or incur any expense" without Valley Forge's consent.  Deft's Ex. C (Excerpts from Valley Forge Claim File, VF 188).   While it is disputed whether someone at Philadelphia attempted to advise Ms. Spurgin of the mediation's progress after the November 2010 mediation attempt, it is *not* disputed that the Nelsons (as the insureds under the Valley Forge policy) failed to keep Valley Forge informed of the $2.3 million settlement, which was entered into without the knowledge and consent of Valley Forge.   This failure invalidated the terms of the Settlement Agreement.

Second, Valley Forge's obligations as an excess carrier were not triggered unless and until Philadelphia's policy limit of $1 million was reached.   As an excess insurer, Valley Forge's obligation to indemnify the Nelsons would only be triggered once Philadelphia paid its $1 million policy limit and Valley Forge was asked to contribute toward settlement. *See CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 579, 746 P.2d 1109 (1987)(an excess policy limits the insurer's liability to the amount of the loss which exceeds the maximum coverage of other valid and collectible insurance); *Rummel v. Lexington Ins. Co.* 123 N.M. 752 (1997).   Valley Forge is not required to pay the $1.3 million difference between Philadelphia's policy limits and the Rivera-Blethin settlement because Philadelphia did not settle for more than $1 million and so there is no excess amount which Valley Forge is obligated to pay.   The Nelsons and Fast Eddie's merely agreed that the settlement would be partially funded by Philadelphia (at policy limits) and that they would have no further liability. Thus, Valley Forge did not breach its duty to indemnify the Nelsons because Philadelphia did not settle for more

10

than the $1 million policy limits, and Valley Forge's excess insurance provisions were not triggered.

Third, as noted previously, Blethin is not an "insured" under the Valley Forge policy. *See* Doc. 127 at 17 (". . . neither Fast Eddie's nor Chris Blethin was an insured under the Valley Forge Policy. . . ."). The Settlement Agreement (Deft's Ex. L) acknowledges the agreement between Blethen and Rivera for the amount of $2,343.882 "to settle all claims against [Blethin]." However, Valley Forge has no obligation to cover the excess amount based on an agreement between the Plaintiff and a non-insured individual.

There is yet another reason why Valley Forge is not required to pay the $1.3 million difference between Philadelphia's policy limits and the Rivera-Blethin settlement terms. While the Court's findings above are sufficient to grant summary judgment for Valley Forge on all issues, nevertheless the Court feels compelled to address what it considers to be a most disturbing aspect of this case. Simply put, Valley Forge is not bound by a settlement agreement which was the product of questionable maneuvering by Mr. Fadduol and Mr. Quesada. Their objective was to squeeze policy limits from Philadelphia while at the same time creating what would appear to be an "excess" for which Valley Forge would be liable.

The Court recognizes that attorneys use various strategies in the negotiations process, but the conduct of Mr. Fadduol and Mr. Quesada strains the notion that these "strategies" were within the bounds of ethical and professional conduct.[5] The New Mexico Rules of Professional Conduct require that an attorney act as an advocate to "zealously assert the client's position. . . ." *See N.M. Rules of Prof. Cond., Preamble.* What the record before the Court strongly suggests here is that Mr. Quesada's legal representation of Mr. Blethin was a sham. Mr. Quesada acted as

---

[5] Mr. Fadduol's firm withdrew as attorney of record for Rivera as third party plaintiff on 7/3/12 (Doc. 55). Rivera was also represented by the Bauman, Dow & Leon law firm, which continues to represent her.

an advocate for the Plaintiff (who was Mr. Fadduol's client) instead of Chris Blethin. Mr. Fadduol arranged for his friend Mr. Quesada to handle Blethin's case, and provided Mr. Quesada with the exact draft settlement agreement that Blethin and Rivera ultimately executed. It is undisputed that Mr. Quesada's knowledge about the case extended only to the information he was fed by Mr. Fadduol. Mr. Quesada never made his own inquiry into the merits of the case, agreed to handle Blethin's case for $1.00, and settled the case—without any evidence of good faith negotiation—for more than Rivera had last requested in mediation. And at the helm of this skullduggery was Mr. Fadduol, who engineered Blethin's representation in order to obtain a settlement which Fadduol used to extract policy limits from Philadelphia, even though Philadelphia was not part of the settlement negotiations between Blethin and Rivera. The Court also questions the integrity of the $1.00 "fee" agreement between Mr. Quesada and Blethin, to the extent that it violates the prohibition against fee splitting under Rule 16-105 of the Rules of Professional Conduct.

C.    Miscellaneous Arguments; New Mexico Unfair Practices Act

In light of the Court's findings above, any other collateral arguments raised by Plaintiff in her cross-motion for summary judgment fail, and the Court need not address them further. For example, Plaintiff asserts that Valley Forge made misrepresentations about coverage and engaged in behavior that resulted in a disparity between the coverage purchased and the benefit received by the insured. Specifically, Plaintiff asserts that Valley Forge marketed its policy as primary level coverage and argued it was excess after a claim was filed.

The Court's findings in its previous Memorandum Opinion and Order (Doc. 127) addressing Valley Forge's partial summary judgment motion renders Plaintiff's argument moot. In that Order, the Court found that Valley Forge was obligated to provide excess coverage only.

The Court arrived at this conclusion based on the plain language of both policies issued to the Nelsons/Fast Eddie's:

> The fundamental flaw with Plaintiff's analysis is that it does not consider the plain language in the Philadelphia Policy's "other insurance" provision. Philadelphia's "shared coverage" . . . provision is triggered only if other insurance is also primary. Plaintiff's argument is not plausible because in the underlying suit, no "other insurance" was primary. Valley Forge was obligated to provide excess coverage only . . . , leaving Philadelphia as the only primary insurer providing full coverage where "other insurance" was not available for the covered loss or damage.

Doc. 127 at 13. There can be no misrepresentation by Valley Forge as to its status as an excess insurer where the plain language of the policy sets out those terms clearly.

## CONCLUSION

In sum, the Court finds in favor of Valley Forge on all issues, and denies Rivera's motion on all issues. A Judgment shall be entered separately.

**THEREFORE,**

**IT IS ORDERED** that Defendant Valley Forge's Second Motion for Summary Judgment **(Doc. 108)** is hereby GRANTED;

**IT IS FURTHER ORDERED** that Plaintiff Rivera's Cross-Motion for Summary Judgment **(Doc. 109)** is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE